THE PEOPLE, *ex rel.* J. B. Debenetti, *vs.* MOSES D. GALE,
clerk of the marine court.

The right of appeal from the marine court of the city of New York to the common pleas was not taken away by the act of July 21, 1853, in relation to the marine court.

But such an appeal can only be resorted to after an actual determination has been made by the marine court at a general term. WHITING, J. dissented.

An appeal does not lie to the common pleas from a judgment rendered by a single judge of the marine court. If such an appeal is taken, it will confer no jurisdiction upon the common pleas; and the judgment of the marine court at special term being thus left in full force, it is the duty of the clerk, when applied to, to issue execution upon it.

A performance of that duty may be compelled by a mandamus issuing out of the supreme court. WHITING, J. dissented.

MANDAMUS to compel the defendant, as clerk of the marine court in the city of New York, to issue an execution upon a judgment of that court.

ROOSEVELT, J. An order was made in this case, directing a mandamus to the clerk of the marine court to compel him to issue an execution on a judgment rendered by one of the judges of that court. The clerk objects that the judgment, although regularly rendered by the marine court, had been regularly reversed by the court of common pleas. The relator, on the other hand, contends that the reversal was a nullity; that the common pleas, in that stage of the proceeding, had no jurisdiction; that an appeal from the single judge of the marine court could only be taken, in the first instance, to the *three* judges of *that* court, and afterward, if at all, to the common pleas.

By the act of July 21, 1853, the jurisdiction of the marine court was greatly enlarged, and, as a consequence, it was deemed proper, at the same time, to provide additional safeguards for the correctness of its judgments. An appeal was accordingly given from any judgment " entered by the direction of a *single justice*," to the "*justices* of the same court at a general term." And the justices were authorized to appoint such general terms,

that is, terms to be held by more than a single judge, "at such times as they deem proper."

The first question presented is, was this appeal, or, more properly, rehearing, in the same court, intended to supersede, not the occasion merely as it ordinarily would, but the right to appeal to a higher court? For it will be remembered that by the code, as it then stood—and there has been no express alteration—it was declared (sec. 34) that the common pleas should have "power to review the judgments of the marine court." A jurisdiction thus clearly given—and, as it appears to me, so fit and proper in itself—could only be taken away by express words or necessary implication, neither of which exists in this case. How, then, is this revisory control of the common pleas to be exercised? The act of 1853, as well as the fitness of things, as it seems to me, clearly answers this question. It places the marine court, in reference to the common pleas, upon the same footing precisely as that upon which the supreme court stood in reference to the court of appeals. No appeal lay from the supreme court to the court of appeals, (*Code,* § 11,) until at least three judges of the former court had been consulted, and until at least two, at general term, had made an "actual determination" of the controversy. The act of 1853, in providing for an appeal from one to three justices of the marine court, declares that the appeal shall be taken "in the same manner and with the like effect as appeals in the supreme court from the decision of a single judge to the general term." One of the "effects," in the supreme court of an appeal from a single judge to three or more judges of the same court, is, as we have seen, that it enables a dissatisfied party—and is an indispensable preliminary —to obtain a review not only in the same court, but in another court. It was the only "manner" in which a party could carry his cause from the court below to the court above. He was required—for that clearly was the object of the legislature—to exhaust the functions of the one court before he resorted to the other. And why, we may ask, should the legislature, in creating general and special terms in the marine court, have deviated from the uniform policy of our judicial system? I say uniform

policy, because the rule contended for had been adopted not only in the organization of the supreme court, but in that of all the other courts in the city. The court of appeals, says the code, (sec. 11,) shall have exclusive jurisdiction to review upon appeal every actual determination *made at a general term*, by the supreme court, or by the superior court, or by the court of common pleas. No appeal, it will be seen, is allowed in any of these cases from one court to another court, until the judgment of the single justice of the subordinate court at special term has been affirmed or reversed by his brethren at general term. But this is not all ; although there is no right of appeal in any case from either of the three named courts to the court above, before the action of the general term, there is a right of appeal from all of them in every case after such action. Why, when extending the system of general and special terms to the marine court, should the marine court, I repeat it, be made an exception to the otherwise universal rule ? Why should not all proceedings thereafter, to rehear or review, as to that court, be conducted "in the same manner and with the like effect," as in the case of all the other courts in the district in which the organization of general and special terms existed ?

It has been suggested, as a difficulty, that by the terms of the code, which prescribe the mode of appealing from inferior courts to the common pleas, an appeal from a general term of several judges would be impracticable. The notice of appeal, it is true, according to the code, must be served "on the justice or on *his* clerk," the return must be made by the "justice," and the appellate court "may compel *him* to make the return," &c. But where is the difficulty in substituting the plural for the singular number in these cases ? Is it not an amendment, or rather an adaptation, necessarily implied in the act of 1853 ? The revised statutes had already declared, and if they had not, the progress of common sense would have dictated the same interpretation, that where the singular number is used, the plural, if necessary, shall be deemed to be included. But the same chapter of the code which requires the service of an appeal on " the justice," in the singular number, equally requires its ser-

The People *v.* Gale.

vice on " the respondent" in the singular number. How then, upon the strict principles contended for, could there be any appeal, even from a single judge, if the party called to respond to the appeal consisted of the plural instead of the singular number? In regulating the costs also, there is a certain sum given to "the appellant," on reversal, and to " the respondent," on affirmance ; both, like the term "justice," nouns in the singular number.

Our conclusions are :

*First,* That the right of appeal from the marine court to the common pleas was not taken away by the act of 1853.

*Second,* That such an appeal can only be resorted to after an actual determination made by the marine court at a general term.

*Third,* That the appeal in the present instance was therefore premature, and gave the common pleas no jurisdiction ; and that the judgment of the marine court at special term being thus in full force, it was the duty of the clerk, when applied to, to issue an execution upon it.

CLERKE, J., concurred.

WHITING, J., dissented.

[NEW YORK GENERAL TERM, June 19, 1856.    *Roosevelt, Clerke* and *Whiting,* Justices.]